UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN ROSHEK,

      Plaintiff,

v.                                                                    Case No. 10-11587
                                                                      HON. AVERN COHN

SPEEDWAY SUPERAMERICA LLC,

      Defendant.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT # 15)

### I. INTRODUCTION

This is an age discrimination case brought under the Michigan Elliot-Larsen Civil Rights Act (Elliot-Larsen), MCL § 37.2101 et seq.[1] Defendant Speedway SuperAmerica, LLC (Speedway), incorporated in Delaware with a principal place of business in Ohio, operates gas station convenience stores in the State of Michigan. Plaintiff Karen Roshek (Roshek) claims that she was unlawfully terminated from her position as a Speedway store manager based on her age.[2] Speedway responds that Roshek was terminated because she violated a nondiscriminatory Speedway policy by overriding employees' reported hours without proper authorization.

Now before the Court is Speedway's motion for summary judgment. For the

---

[1]The Court has diversity jurisdiction under 28 U.S.C. § 1332.

[2]Roshek's complaint asserts a second count, violation of the Bullard-Plewecki Employee Right to Know Act under MCL § 423.501. (Doc. 1). However, in Roshek's response to Speedway's present motion, (Doc. 17), Roshek states that she will no longer pursue the claim due to the fact that Speedway has provided her employee file, which was the basis for the claim. Roshek's second count is deemed dismissed.

reasons that follow, Speedway's motion will be granted.[3]

## II. FACTS

### A.

Roshek was hired by Speedway in November of 1987 as a cashier for a store located in Warren, Michigan. In February of 1988, Roshek was promoted to assistant manager of the store. In August of 1988, she was promoted to store manager, a position she held until her termination on February 15, 2010.

Prior to being terminated, Roshek's most recent performance review, for the period between December 24, 2008, and December 23, 2009, rated her overall performance as "very satisfactory" and included a salary increase. (Doc. 17-4). At the time of her termination, Roshek was 49 years old. She was replaced by Melissa Sieradzki, a 28 year old store manager from another Speedway location.

### B.

The incident that led to Roshek's termination arose when it was brought to Speedway's human resources department's attention that Roshek was violating a Speedway policy by overriding, i.e., reducing, the "punch-out" times of her hourly employees. The Speedway Wage and Hour Compliance policy states in pertinent part:

> Hourly associates are required to report all hours worked. It is a manager's responsibility to ensure hours worked are being reported properly and to take reasonable steps to maintain an awareness of hours worked by subordinates.

> Associates must clock in at the start and out at the end of each workday at

---

[3]The Court takes notice of the properly filed joint statement of material facts in dispute, (Doc. 21), filed by the parties in full compliance with the Court's motion practice guidelines. See http://www.mied.uscourts.gov/_practices/cohn/motion.htm.

the timeclock. . . .  This is to verify that each associate is paid for all hours worked . . . .

Managers are permitted to enter missing punches to reflect the actual and accurate hours an associate worked. <u>Managers are prohibited from overriding employee punches for hours worked without prior express approval from HR and will be terminated for any unauthorized changes to employees punches</u>.

Accordingly, non-exempt associates (hourly) must be paid for all hours worked, whether scheduled or non-scheduled . . . .

(Doc. 15-5, pp. 2-3) (emphasis added).

After being alerted of a potential issue at Roshek's store, Diana Anderson, a Speedway human resources representative, discovered the overrides when reviewing the weekly "Time Clock v. Edited Punch" reports, which reflect adjustments made by store managers in Speedway's electronic reporting system Timelink.  She discussed the override issue with Richie Coleman (Coleman) and Marshal Anderson (Anderson), Speedway district managers and supervisors of Roshek, after which Coleman and  Anderson interviewed Roshek to get her side of the story.  Roshek explained to Anderson and Coleman that the employees had told her to make the changes.[4]  (Doc. 21, p. 12). Coleman and Anderson next interviewed the employees in order to verify Roshek's explanation.  However, both employees denied ever making the request.  (Docs. 15-14, 15-15, 15-33, p. 11).[5]

Following the investigation, Anderson informed Roshek that she was terminated,

_____

[4]Roshek asserts that she provided two additional reasons to Anderson and Coleman, which will be discussed in further detail below.

[5]Coleman also states that he verified on Speedway surveillance DVDs that the employees appeared to be working during the times that Roshek said they were not. (Doc. 15-12); (see also Doc. 20, p. 21).

3

"[f]or making changes to the employee's time clocks and for not being honest with [him] in the reason given for making the changes."  (Doc. 15-29, p. 79).  Roshek's termination paperwork provides a further description:

> Recently, it was discovered that [Roshek] had been overriding her employee's time in Timelink. When asked, she stated that she had been only doing it when her employees informed her that the change needed to be made. All employees were questioned about the situation and all stated that they have never asked [Plaintiff] to change their timecards to reflect less hours worked. We were able to find where this had occurred at least 20 times that she shorted employees on time and pay over the last 3 months. This is a violation of both company policy and wage and hour compliance laws. This has resulted in [Roshek's] termination of employment.

(Doc. 17-16).

## C.

As to Speedway's policy, Roshek does not dispute that as a Speedway store manager she was required to be familiar with Speedway's policies and procedures.  (Doc. 21, p. 4).  She also admits to being aware that the "company strictly prohibited managers from reducing an employee's time punch for hours the employee actually worked" and "as a manager she could be immediately terminated for reducing an employee's time for house they had actually worked."  (Doc. 15-40, p. 94).

As to the policy violation, Roshek admits that she overrode the employees' punch-out times.  (See Doc. 21, p. 12-13).  However, she says that the employees' punch-out times required corrections because they originally reflected time during which the employees were not working. In other words, she states that the changes were made in order to reflect actual hours worked  by her employees.  (Id.).  Roshek further explained that when she reduced an employee's time because the employee was no longer working she would let the employee know at which point the employee would always agree to the

4

reduction.  (Doc. 17-21, pp. 13-14).

With respect to how she responded when interviewed about the overrides, Roshek admits that she told Anderson and Coleman that she did it because the employees told her to, (Doc. 21, p. 13; Doc. 23, p. 2), an explanation which was later denied by the employees. However, Roshek disputes that this was the only reason provided to Marshall and Coleman during the interview.  She says that she also told them that she made changes "when she observed [employees] not working for a period of time"; or "was told by another employee someone else was not working, viewed the DVR [recording of the store] and discussed it with the employee and they agreed they were not working and would have their time reduced."  (Doc. 21, p. 13, Doc. 23, p. 2).[6]

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists when, 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 475-76 (6th Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  However, the non-moving party must present some evidence to show a genuine issue for trial exists.  "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 476 (quoting Anderson, 477 U.S. at 249-50) (internal quotation marks

---

[6]Roshek does not dispute that Coleman viewed the DVR during the time periods in which Roshek made overrides and determined that "the employees were still working past the time their time was edited back to."  (Doc. 21, p. 11).

omitted).

## IV. ANALYSIS

### A. Legal Standard

Roshek's Elliot-Larsen claim is subject to the same evidentiary burdens as claims for employment discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq, because the two sets of law are substantially identical. McDonald v. Union Camp Corp., 898 F.2d 1155, 1159 (6th Cir.1990). Under the guidelines established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), Roshek can establish a prima facie case by demonstrating that: (1) she was a member of the protected class of individuals between the ages of 40 and 70; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a younger person. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 310-11 (1996).

If Roshek can establish a prima facie case, the burden shifts to Speedway to show a "legitimate, non-discriminatory reason for the termination." Stockman v. Oakcrest Dental Ctr., P.C., 480 F.3d 791, 802 (6th Cir. 2007). If Speedway can show such a reason, the burden shifts back to Roshek to prove by a preponderance of the evidence that Speedway's proffered reason is, in fact, pretextual. Hein v. All Am. Plywood Co., 232 F.3d 482, 489 (6th Cir. 2000).

To demonstrate pretext, Roshek must show that Speedway's reason (1) has no basis in fact, (2) did not actually motivate Phillips' termination, or (3) was insufficient to warrant Phillips' termination. Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000).

6

B. Prima Facie Case

There is no dispute that Roshek meets the first, second, and fourth prima facie elements under McDonnell Douglas, supra.  However, Speedway argues that Roshek fails to meet the third element: that she was qualified for the position from which she was terminated.  Particularly, Speedway relies on Sokolnicki v. Cingular Wireless, LLC, 331 Fed. Appx. 362, 366 (6th Cir. 2009), and Town v. Michigan Bell Telephone Co., 455 Mich. 688, 699 (1997), for the proposition that Roshek overriding employees' reported hours demonstrates that she was not doing her job well enough at the time of her termination. Speedway's argument is misplaced.

As an initial matter, neither Sokolnicki, supra, nor Town, supra, decide the issue of whether a plaintiff made out a prima facie case.  Rather, in both decisions, the courts chose to presume that the prima facie elements had been met, and decided the case on the issue of whether the plaintiffs were able to establish that defendants nondiscriminatory reason was pretext.  See Sokolnicki, supra, at *5 ("We, however, need not determine whether [plaintiff] was qualified because, even assuming that she made out a prima facie case, she cannot establish pretext.") (citing Ladd v. Grand Trunk Western R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009); see also Town, supra, at 699 ("Rather than evaluate plaintiff's case at the prima facie stage, however, in this case we elect to presume that plaintiff has established a prima facie case").

Further, under Cline v. Catholic Diocese of Toledo, 206 F.3d 651 (6th Cir. 2000), "when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for

7

terminating plaintiff." Id. at 660-61 (citations omitted).  Thus, Speedway's argument that Roshek's violation of the wage and hour compliance policy proves she was not qualified for her position lacks merit.

Thus, Speedway has not set forth sufficient evidence to demonstrate that Roshek fails to satisfy the third McDonnell Douglas element, particularly in light of the positive performance evaluations that Roshek received prior to the policy violation.  Moreover, even without the prima facie determination, like Sokolnicki and Town, the Court may presume a prima facie so as to determine whether Speedway's proffered nondiscriminatory reason is a pretext for age discrimination.  Accordingly, the burden shifts to Speedway to demonstrate a legitimate non-discriminatory reason for Roshek's termination.  See Stockman, supra, at 802.

### C.  Pretext

As stated above, Speedway's legitimate non-discriminatory termination reason is that Roshek violated Speedway's wage and hour compliance policy, which prohibits store managers from overriding employees hours without authorization.  (See Doc. 15-5, supra, at pp. 2-3)

In response, Roshek first argues that she can rebut Speedway's reason because it has no basis in fact.  Particularly, she says that she did not violate the policy because she only reduced employees' time sheets for time that they were not working, not for hours actually worked.  Roshek's argument lacks merit.

As stated above, the policy states, "Managers are prohibited from overriding employee punches for hours worked without prior express approval from HR and will be terminated for any unauthorized changes to employees punches."  (Doc. 15-5, pp. 2-3)

8

(emphasis added).  A reasonable interpretation of the policy is that a manager does not have the discretion to unilaterally change an employees' time sheet without prior approval from the human resources department.  Further, while Roshek says that Speedway did not formally communicate the policy to her, she does not dispute that as a store manager she was responsible for being familiar with Speedway's policies, one of which is the wage and hour compliance policy.  (Doc. 21, p. 4).  Finally, Roshek does not dispute that she overrode employee's time sheets without authorization.  Thus, the argument does not rebut Speedway's reason as pretext on the ground that it has no basis in fact.

Next, Roshek says that Speedway's reason is pretextual because another similarly situated employee was treated more favorably, i.e., not terminated, after also violating the policy by overriding employees' time sheets.  Particularly, Roshek argues that Bryan Smith (Smith), a Speedway store manager, also violated the policy by overriding employees' hours.  However, rather than being terminated, Smith was given a written warning.

To demonstrate pretext on this ground, Roshek must show that Smith is similarly situated in all relevant respects.  Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir. 2002) (citing Ercegovich v. Goodyear Tire & Rubber, 154 F.3d 344, 349 (6th Cir. 1998)).  The relevant aspects "may vary depending on the facts and circumstances of a given case." Johnson v. Interstate Brands Corp., 351 Fed. App'x 36, 39 (6th Cir. 2009).  In a case involving employee discipline such as termination, the Sixth Circuit has held that considerations should include "whether the individuals have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Id. (quoting Ercegovich, supra, at 352 (quoting

9

Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir. 1992))).  Particularly, "[f]or the conduct to be the same without such differentiating or mitigating circumstances that would distinguish it or the employer's treatment of it, it must be of comparable seriousness–i.e., similar in kind and severity."  Johnson, supra (citing Clayton, supra, at 611; Barry v. Noble Metal Processing, Inc., 276 Fed. App'x 477, 481 (6th Cir. 2008)).

Here, Speedway asserts that it terminated Roshek not only because she violated the wage and hour compliance policy by overriding employees' punch-out times, but also because she was dishonest about her actions when asked about the violation by Anderson and Coleman; that is, because she told them that her employees told her to make the changes, which later the employees denied.  To distinguish Roshek from Smith, Speedway points to the fact that, unlike Roshek, Smith admitted immediately to his supervisors that he had been overriding employees' reported times, said that he was not aware that it was a violation, and assured the supervisors that he would not violate the policy again.[7] Speedway thus argues that Roshek's dishonesty is a mitigating circumstance which sets Roshek's conduct apart from Smith's and which justifies the decision to terminate Roshek while only giving Smith a warning.  The Court agrees.

While Roshek disputes that the only reason she gave Anderson and Coleman to explain why she was overriding the employees' time punches was because they told her to, she does not dispute that the reason was dishonest.  This is different from Smith, who chose to admit without qualification that he committed the violation with assurance that it

---

[7]Smith also stated that Roshek trained him for his current position as store manager.  On this ground, Speedway further argues that Smith is not similarly situated. However, Speedway fails to provide support for this proposition.  Thus, the argument lacks merit.

would not happen again.

Further, the fact that Anderson and Coleman did not testify to the two additional reasons does not create a genuine issue of material fact for Roshek to survive summary judgment because it does not change the undisputed facts that Roshek violated a company policy and then was dishonest about at least one of the reasons.  Indeed, if anything, the additional reasons serve to demonstrate a greater difference between Roshek and Smith's situations; differences that further justify Speedway's decision to treat them differently. Johnson, supra, at 39.

In light of the above, although Roshek's conduct in violating the policy was similar in kind to Smith's, their conduct was dissimilar in severity, thus justifying Speedway's decision to discipline the circumstances differently.  Johnson, supra; Clayton, supra, at 611; Barry, supra.  Accordingly, an inference of discrimination due to the different treatment by Speedway is not warranted.  Clayton, supra, at 40.

## V. CONCLUSION

In sum, Roshek has not presented evidence sufficient to allow a reasonable trier of fact to conclude that intentional age discrimination was the "but for" cause of Speedway's decision to terminate her.  Johnson, supra, at 42.  Thus, Speedway's motion for summary judgment is GRANTED.  The case is DISMISSED.

SO ORDERED.

       S/Avern Cohn                      
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated:  August 4, 2011

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 4, 2011, by electronic and/or ordinary mail.

<u>S/Johnetta Curry-Williams for Julie Owens</u>
 Case Manager

12